**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 01-41003

_____

TOMMIE J. DENSON,

Plaintiff-Appellant,

versus

AKBAR N SHABAZZ, Etc; ET AL

Defendants

AKBAR N. SHABAZZ, Chaplain; STANLEY CULYAR, Chaplain,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Texas
(6:99-CV-663)
_____
June 6, 2002

Before HIGGINBOTHAM, WIENER, and BENAVIDES, Circuit Judges.

PER CURIAM[*]:

Plaintiff-Appellant Tommie Denson, Texas Prisoner # 687907, appeals the district court's dismissal at summary judgment of his 42 U.S.C. § 1983 claims against fellow inmate Vernon Wheeler, various prison Chaplains, and several other Texas Department of

---

[*] Pursuant to 5TH Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH Cir. R. 47.5.4.

Criminal Justice (TDCJ) officials, for violating his First Amendment right to the free-exercise of his religion. Agreeing with the results reached by the trial court, we affirm.

## I.

### FACTS AND PROCEEDINGS

In July 1999, inmate Denson filed a formal request with Chaplain Stan Cuyler to have his religious preference changed from Baptist to Muslim. Denson also requested that he be allowed to attend Friday Jumah (faith) services and be given a pork-free diet, both consistent with the tenets of Islam. Chaplain Cuyler referred Denson to inmate Wheeler, who, at the time, was the designated Islamic coordinator/volunteer for that particular prison unit. Wheeler informed Denson that, according to TDCJ Chaplaincy Manual policy 6.02,[1] he would have to complete Shahada training before he could attend Jumah services and before he could be granted a pork-free diet.[2]

According to summary judgment evidence in the form of

---

[1] Although the policy was not reduced to writing until October 1999, affidavits from the Chaplains and prison officials establish that the policy has been in effect since 1996. In relevant part, Chaplaincy Manual policy 6.02 reads "Jumah prayer service is restricted in attendance to Muslims who have completed Shahada with the approval of the Muslim Chaplain."

[2] Apparently, Shahada training instructs Muslims in the Five Pillars of Islam. According to Islamic faith, this knowledge is required before a potential disciple is allowed to partake in Jumah services. Chaplain Cuyler's affidavit indicates that the policy was furnished by the Department of Chaplaincy and Chaplain Shabazz, the Muslim Chaplain.

affidavits from Wheeler and the Chaplains involved, Wheeler and Cuyler interviewed Denson to determine his readiness for the Jumah service. After listening to Denson's answers to Wheeler's questions, Cuyler determined that Denson was not familiar with the Five Pillars of Islam. Cuyler informed Denson that before he could attend Jumah services, he would have to attend Shahada classes, which were regularly scheduled and taught by inmate Wheeler.

Following this interview and decision, Denson filed two Step 1 grievances with the TDCJ protesting (1) his exclusion from Jumah services and (2) his ineligibility for a pork-free diet. Denson's grievance regarding Jumah services was denied on the grounds that prison policy required him to finish Shahada training before attending the services;[3] his grievance regarding his diet was denied on the grounds that his diet could be changed only after he completed Shahada training and had his official prison documents altered to reflect his faith change.[4] Denson then filed a Step 2 grievance protesting the Step 1 decision regarding his exclusion from Jumah services,[5] but he did not appeal the adverse Step 1 diet decision.

---

[3] Evidently, Shahada "training" and Shahada "classes" are not synonymous: An adherent may demonstrate his knowledge of the Shahada without attending formal classes.

[4] According to Denson's complaint in his Step 1 diet grievance, he was offered a vegetarian diet until the official faith change.

[5] Denson's Step 2 Jumah grievance was denied for the same reasons specified in the response to his Step 1 grievance.

3

In November 1999, proceeding pro se and in forma pauperis, Denson brought suit against Wheeler, the Chaplains, and other TDCJ officials alleging unconstitutional deprivation of his free-exercise right.[6]  Pursuant to 28 U.S.C. § 636(c), the case was referred to a United States Magistrate Judge to conduct all proceedings in the case.  After the Spears hearing, the court dismissed, with prejudice, the claims against Chaplain Groom, Wardens Upshaw and Moore, and Grievance Administrator Schumacher, because those defendants were not personally involved in the alleged deprivation and Denson presented no evidence to suggest a causal connection between those defendants' actions and the purportedly unconstitutional treatment he had received.  The court determined that Denson's allegations could only state a legally cognizable claim against the remaining defendants, Chaplains Cuyler and Shabazz,[7] and inmate Wheeler.

Denson attempted an immediate appeal of these dismissals, but his appeal was denied by a panel of this court for lack of jurisdiction because the trial court's dismissal order did not adjudicate all of Denson's claims against all the parties. Subsequently, the remaining three defendants submitted motions for

[6]  By December 1999, Denson had finished his Shahada classes, had been put on the Jumah services list, had been given a pork-free diet, and had his religious designation officially changed to Muslim on his prison documents.

[7]  Chaplain Akbar Shabazz was the Muslim Chaplain for the prison unit, under whose direction and authority inmate Wheeler acted as the Islamic volunteer/coordinator.

4

summary judgement.  Wheeler moved for dismissal on grounds that he was not a state actor, submitting his own affidavit as well as the affidavit of Kenneth Reynolds, the Senior Chaplain for Denson's prison unit, both of which averred that Wheeler's duties were administrative and that he did not exercise any personal discretionary or decision-making authority over other inmates.  On the bases of these unopposed and uncontradicted affidavits, the trial court determined that Wheeler was not a state actor and dismissed him from the suit.

Chaplains Cuyler and Shabazz moved for summary judgment on the alternative grounds that (1) the prison policy pursuant to which they acted was not unconstitutional and (2) regardless of its constitutionality, they were entitled to qualified immunity.  The court, applying the Supreme Court's four-prong analysis in Turner v. Shafley,[8] found that the Chaplaincy Manual policy requiring Shahada training before inclusion in Jumah services was constitutional.  Additionally, the court concluded that even assuming, arguendo, that the Chaplains violated Denson's free-

---

[8]  482 U.S. 78, 89 (1987) (stating that when assessing whether prison regulation is valid, courts must consider whether the regulation is reasonably related to "legitimate penological interest," considering the following four factors: (1) whether a valid, rational connection exists between the regulation and the governmental interest; (2) whether alternative means of exercising the right exist; (3) the impact accommodation of the asserted constitutional right will have on guards, inmates, and the allocation of prison resources; and (4) availability of other alternatives to the regulation that would accommodate the constitutional right with de minimus cost to penological interests).

exercise right by excluding him from Jumah services until he completed Shahada training, they still enjoyed qualified immunity from Denson's § 1983 claim because the right was not clearly established and they acted in an objectively reasonable manner. Denson timely appealed.

## II.

## ANALYSIS

### A. Standard of Review

We review the district court's ruling on a motion for summary judgment de novo, applying the same standard as the district court. A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact.[9] An issue is material if its resolution could affect the outcome of the action.[10] In deciding whether a fact issue has been created, we must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.[11]

The standard for summary judgment mirrors that for judgment as a matter of law.[12] Thus, the court must review all of the evidence in the record, but make no credibility determinations or weigh any

---

[9] Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[10] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[11] See Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir. 1999).

[12] Celotex Corp., 477 U.S. at 323.

6

evidence.[13]  In reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached.[14]

The trial court dismissed Denson's claims against Groom, Upshaw, Moore, and Schumacher under 28 U.S.C. §§ 1915 (e)(2)(B)(i) and (ii).  Dismissals for filing frivolous claims pursuant to § 1915 (e)(2)(B)(i) are reviewed for abuse of discretion.[15] Dismissals for failure to state a claim pursuant to § 1915 (e)(2)(B)(ii) are reviewed <u>de novo</u>, the same standard used to evaluate dismissals pursuant to Fed. R. Civ. P. 12(b)(6).[16]  As the trial court ruled that Denson's allegations against these four defendants were frivolous <u>and</u> failed to state a claim, we review the entire issue under our <u>de novo</u> standard out of an abundance of caution, but we note that we would reach the same result under either standard of review.

## B. <u>Dismissal of Groom, Upshaw, Moore, and Schumacher</u>

The trial court dismissed Denson's claims against these four defendants because it found that those claims had no basis in law

---

[13]  <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 150 (2000).

[14]  <u>Id.</u> at 151.

[15]  <u>Siglar v. Hightower</u>, 112 F.3d 191, 193 (5th Cir. 1997).

[16]  <u>Black v. Warren</u>, 134 F.3d 732, 733-34 (5th Cir. 1998).

or fact.  After the <u>Spears</u> hearing, the court determined that these four defendants were supervisors and did not personally participate in the conduct that allegedly deprived Denson of his free-exercise right.  Under established § 1983 law, a supervisory official cannot be held vicariously liable for the actions of subordinates, and can be held personally liable only if (1) the supervisor was personally involved in the constitutional deprivation or (2) a sufficient causal connection exists between the supervisor's allegedly wrongful conduct and the constitutional deprivation.[17]  Here, Denson did not allege any personal involvement by these defendants and proceeded solely on a vicarious liability theory.  The trial court properly dismissed the claims against these defendants.

## C.  <u>Dismissal of inmate Wheeler</u>

Denson appeals the trial court's ruling that Wheeler was not a state actor.  Generally, private individuals like Wheeler are not subject to § 1983 liability because they are not acting under color of state law.  If there is a sufficient nexus between the private actor's allegedly unconstitutional conduct and state involvement, however, the private actor may be deemed a state actor for § 1983 purposes.[18]  Denson contends that Wheeler, along with teaching the

---

[17]  <u>Thompkins v. Belt</u>, 828 F.2d 298, 303 (5th Cir. 1987).

[18]  <u>Albright v. Longview Police Dep't</u>, 884 F.2d 835, 838 (5th Cir. 1989) (delineating three tests to determine the sufficiency of the nexus: (1) state creates a legal framework that governs the private conduct; (2) state delegates traditional powers to a private party; or (3) state establishes "symbiotic relationship" with private party).

Shahada classes and serving as the Islamic Coordinator for the prison unit, was empowered by the Chaplains with decision-making authority over other inmates, making him a state actor for § 1983 purposes.

Despite his insistent allegations and subjective opinions, Denson offers no summary judgment evidence to support his claim. Moreover, he offers no evidence to counter the affidavits submitted by Wheeler to the effect that he (Wheeler) had only administrative responsibilities. The affidavit submitted by Senior Chaplain Reynolds states that "Wheeler does not exercise any personal discretion of or over whom [sic] is selected to attend or participate in Islamic religious activities or any other religious activities or programs. I make those decisions personally in accordance with [TDCJ policies]." The affidavit submitted by defendant Chaplain Cuyler states that Wheeler interviewed Denson in Cuyler's presence, but that the determination of Denson's fitness for Jumah services was made by Cuyler, apparently based on Denson's answers to Wheeler's questions.

In short, all competent summary judgment evidence shows that Wheeler's duties were limited to non-discretionary, administrative details regarding the Muslim community and teaching Shahada classes to inmates who needed instruction. Denson produces nothing in response except for his own conclusional allegations that the affidavits were perjured and that Wheeler excluded him from Jumah services. As the evidences establishes that Wheeler had no

9

discretionary or decision-making authority, and indeed did not make any decision regarding Denson's readiness for Jumah services, Wheeler cannot be considered a state actor. Therefore, the trial court's dismissal of the claims against Wheeler was proper.

**D.** **Summary Judgment in Favor of Chaplains Cuyler and Shabazz**

As an initial matter, we address Denson's contention that the trial court erred by not addressing his claim that the Chaplains violated the consent decree of Ruiz v. Estelle[19] by placing an inmate (Wheeler) in a position of authority over other inmates. Apart from the fact that the trial court expressly included a discussion of the Ruiz decree in its Memorandum Opinion and Order of Dismissal, Denson's argument on this issue still fails because (1) Wheeler was not in a position of authority, and (2) violations of a remedial decree alone cannot form the basis of a § 1983 suit.[20]

In addition to his argument regarding the Ruiz decree, Denson submits three other frivolous appellate issues. First, the trial court properly dismissed Denson's free-exercise claim against the

---

[19] 503 F. Supp. 1265 (S.D. Tex. 1980), aff'd in part and vacated in part, 679 F.2d 1115, amended in part and vacated in part, 688 F.2d 266 (5th Cir. 1982).

[20] Green v. McKaskle, 788 F.2d 1116, 1122-23 (5th Cir. 1986) ("[R]emedial court orders per se, apart from the independent constitutional grounds affirmed there, cannot serve as a substantive basis for a § 1983 claim for damages because such orders do not create 'rights, privileges, or immunities secured by the Constitution and laws'") (citation omitted).

10

Chaplains resulting from the prison's denial of a pork-free diet.[21] Second, Denson raises an Fourteenth Amendment Equal Protection Clause claim for the first time on appeal. Even assuming Denson could make a cogent Fourteenth Amendment argument, which he does not, this issue is not properly before us and we do not consider it.[22] Finally, citing 28 U.S.C. § 636, Denson frivolously argues that the district court should have ruled on his objections to the magistrate judge's dismissal orders. The case was properly transferred to a United States Magistrate Judge pursuant to § 636 (c), and any appeals from the magistrate judge's ruling are taken "directly to the appropriate United States court of appeals ... in the same manner as an appeal from any other judgment of a district court."[23]

Turning now to the cognizable aspects of Denson's § 1983 claim against Cuyler and Shabazz, we note initially that Denson does not present a cogent argument regarding the constitutionality of

---

[21] The evidence establishes that Denson never filed a Step 2 grievance protesting the denial of a pork-free diet. As he did not exhaust all of his administrative remedies, that claim is not properly before the court. Booth v. Churner, 532 U.S. 731, 740 (2001) ("Congress's imposition of an obviously broader exhaustion requirement makes it highly implausible that it meant to give prisoners a strong inducement to skip the administrative process by simply limiting prayers for relief to money damages not offered though administrative grievance mechanisms. ... Thus, we think that Congress has mandated exhaustion clearly enough regardless of the relief offered through administrative procedures.")

[22] Burch v. Coca-Cola Co., 119 F.3d 305, 319 (5th Cir. 1997).

[23] 28 U.S.C. § 636(c).

11

Chaplaincy Manual policy 6.02, which required Shahada training before attending Jumah services. Instead he urges only that the Chaplains have not demonstrated that the policy was "not facially unconstitutional." Nevertheless, we address the free-exercise claim, noting that Denson's § 1983 action against Cuyler and Shabazz requires a two-part inquiry: First, we must determine if Denson's allegations state a constitutional violation; if so, we must then assess whether Cuyler and Shabazz are nonetheless entitled to qualified immunity. The trial court analyzed the constitutionality <u>vel</u> <u>non</u> of Chaplaincy Manual policy 6.02 under the test promulgated by the Supreme Court in <u>Turner v. Shafley</u>.[24] Although we do not now address this aspect of the trial court's decision, we note that it is far from clear that this situation —— in which Denson alleges that sectarian rules, enforced by the Muslim Chaplain in accordance with the Muslim faith, adhered to by the other Muslims in the prison, and embodied in the TDCJ Chaplaincy Manual, conflict with his right freely to exercise his faith —— should even be analyzed under the <u>Turner</u> framework.[25]

---

[24]  482 U.S. 78.

[25]  In <u>O'Lone v. Shabazz</u>, 482 U.S. 342 (1987), the Supreme Court extended and applied the <u>Turner</u> test to prisoners' free-exercise claims, upholding a general prison work policy that prevented prisoners assigned to certain work details from attending Jumah services. In that case, the Court dealt with a policy created for penological purposes that had the effect of prohibiting particular inmates from participating in Jumah services. Here, in contrast, we deal with a prison Chaplaincy policy created by Chaplains for the purpose of ensuring orderly and bona fide religious conversions. <u>Cf. Williams v. Lara</u>, 52 S.W.3d 171, 187-

In any case, we need not delve into the constitutionality vel non of the policy today.  As Denson has now been allowed entrance into Jumah services, has received his pork-free diet, and has had his official religious designation changed, his suit for monetary damages against the defendants must still overcome the Chaplains' qualified immunity defense.  Our review of the record and the applicable case law convinces us that Denson's allegations fail the two-part qualified immunity inquiry.  Even when the facts are considered in the light most favorable to Denson, under which we would assume arguendo that he establishes a constitutional violation, he still cannot show that the right was "clearly established" or that Chaplains Cuyler and Shabazz failed to act in an objectively reasonable manner.[26]  It is not clearly established that requiring an inmate to undertake specific religious training, consistent with the dictates of the religion under the auspices of that religion's Chaplain, before he can change his official religious designation and gain full admittance to all services of his newly designated religion, violates the free-exercise clause.  To the contrary, the policy and the classes could be viewed as a method of facilitating an inmate's free exercise of religion within

---

88, n. 10-12 (listing federal appellate court cases and noting that not all alleged constitutional violations in prisons have been analyzed under the Turner test).

[26] See Harper v. Harris County, 21 F.3d 597 (5th Cir. 1994) (qualified immunity shields a state actor conduct as long as the conduct (1) does not violate a clearly established right and (2) was objectively reasonable under existing law).

the confines of a prison, taking into account the penological and disciplinary concerns of prison officials, the Chaplains, and fellow worshippers. Moreover, Chaplains Cuyler and Shabazz did not act arbitrarily and selectively towards Denson. He was subjected to the same policy, furnished by the Department of Chaplaincy and the Muslim Chaplain himself, that is applicable to all those desiring to attend the Jumah services, and he was even offered private tutoring by the Chaplains to help him fulfill his requirements.[27]  Under these circumstances, their conduct was objectively reasonable.

## III.

### CONCLUSION

For the foregoing reasons, summary judgment in favor defendants is

AFFIRMED.

---

[27]  Although Denson purports to support his position by demonstrating that other inmates were allowed into Jumah services without Shahada classes, the summary judgment evidence shows that those inmates demonstrated Shahada knowledge without taking the classes, and hence were not similarly situated with Denson. See also supra note 3.

14